**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**EBONEY A.,**

                                 **Plaintiff,**                       **6:20-CV-6893Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**

_____

## DECISION AND ORDER

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #13.

## BACKGROUND

        The administrative record contains a psychological evaluation of plaintiff

for the Rochester City School District, dated May 2, 1994, which noted that spinal

meningitis caused  significant learning problems suggesting a low average to average

intellectual potential. Dkt. #9, pp.256-257. Plaintiff exhibited severe impairment in verbal

reasoning skills and short-term auditory recall, with mathematics skills at the 5th grade

level and written language skills at the 3rd grade level. Dkt. #9, p.257. She was noted to

be pleasant and cooperative and to require much structure and support. Dkt. #9, p.257.

In 2008, plaintiff suffered a ruptured anterior communicating artery which was coiled, but recurred and was clipped in 2010. Dkt. #9, p.334. Imaging in 2011 and 2015 revealed a 2 millimeter irregularity of the left internal cartoid bifurcation and subsequent interval growth of that bifurcation into a 4 millimeter aneurysm. Dkt. #9, p.334.

On November 5, 2014, Amy Kalliopal, Physician's Assistant - Certified ("PA-C"), completed a Physical Assessment for Determination of Employability for the Monroe County Department of Human Services ("DHS Employability Assessment"), and opined that plaintiff was unable to work for approximately 6 months because she needed to address a current aneuryism. Dkt. #9, p.431. She noted that plaintiff suffered memory loss and uncontrolled hypertension, noting that plaintiff might benefit from a referral for evaluation of her memory disorder. Dkt. #9, p.431. She estimated that plaintiff was capable of standing, walking and sitting for more than four hours in an eight-hour work day and was capable of pushing, pulling, bending, lifting and carrying two to four hours in an eight-hour workday. Dkt. #9, p.433.

On July 11, 2015, PA-C Kalliopal completed a DHS Employability Assessment and opined that plaintiff was unable to work for approximately 6 months because she needed to follow up with a neurosurgeon to assess the increasing size of a new aneurysm. Dkt. #9, p.441. She noted plaintiff suffered chronic headaches which were currently not well controlled. Dkt. #9, p.441. She estimated that plaintiff was capable of standing, walking and sitting for more than four hours in an eight-hour work

day and was capable of pushing, pulling, bending, lifting and carrying two to four hours in an eight-hour workday. Dkt. #9, p.433.

On January 28, 2016, Nurse Practitioner Anne Calvaruso completed a DHS Employability Assessment and opined that plaintiff was able to work with reasonable accommodations, *to wit*, no lifting of more than 20 pounds, breaks every 2-3 hours and no standing or sitting for extended periods of time, for the next 9 months due to her pregnancy. Dkt. #9, p.487. She estimated that plaintiff was capable of sitting for more than four hours in an eight-hour work day and was capable of standing, walking pushing, pulling, bending, lifting and carrying two to four hours in an eight-hour workday. Dkt. #9, p.488.

An MRI in May of 2016 revealed that the bilobed left internal carotid artery aneurism had expanded to 6.5 millimeters by 5.6 millimeters . Dkt. #9, p.345. Because the aneurism was actively enlarging, Dr. Miranpuri recommended embolization with stent assisted coiling. Dkt. #9, p.345. Plaintiff's mother attended the appointment with plaintiff and they agreed to go ahead with the procedure in late August, when plaintiff's children returned to school. Dkt. #9, p.345. Dr. Miranpuri noted that plaintiff should undergo a neuropsychological evaluation following that procedure to address plaintiff's reports of memory deficits and difficulty focusing and multitasking. Dkt. #9, p.345.

On July 25, 2016, Nurse Practitioner Kim Page completed a DHS Employability Assessment and opined that plaintiff was permanently disabled due to permanent cognitive deficits from her aneurysms. Dkt. #9, p.397. She estimated that

plaintiff was capable of standing, walking, sitting, pushing, pulling, bending, lifting and carrying more than four hours in an eight-hour work day. Dkt. #9, p.398.

Plaintiff explained to Nurse Practitioner Carla Scheiber on November 28, 2016 that she often struggles with remembering things day to day. Dkt. #9, p.346. Plaintiff's mother was present for this appointment and expressed her willingness to assist plaintiff with transportation and childcare, but indicated that she was frustrated with plaintiff's motivation. Dkt. #9, p.346. NP Scheiber encouraged plaintiff and her mother to follow up with neurosurgery, warning that a failure to do so could result in plaintiff's death. Dkt. #9, p.350. NP Scheiber noted her concern that neurocognitive deficits from the previous aneurism could play a role in non-compliance and opined that plaintiff could benefit from a care manager. Dkt. #9, pp.350 & 354.

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on November 29, 2016, at the age of 39, alleging disability beginning July 1, 2008 due to subarachnoid hemorrhage, ruptured cerebral aneurysm, cognitive defects and brain aneurysms. Dkt. #9, p.102.

The SSA employee assisting plaintiff with the filing of her application on January 6, 2017 noted that although plaintiff was very polite and cooperative, she had extreme difficulty answering questions regarding her medical information and that her mother assisted plaintiff in providing this information. Dkt. #9, pp.240-241. Plaintiff's mother and a Monroe County DHS worker completed plaintiff's Disability Report. Dkt.

#9, pp.240-241. Plaintiff completed a function report dated January 30, 2017, with her mother's assistance, indicating that she cares for her children and cooks simple things, but that her mother helps her with everything. Dkt. #9, pp.274-276. Plaintiff indicated that she needs reminders to take a shower, brush her teeth, brush her hair, get dressed, and put on deodorant. Dkt. #9, pp.275-276. She indicated that she gets distracted and overwhelmed very quickly and needs reminders as to what she was doing. Dkt. #9, pp. 276-277 & 280. She cannot remember what she did 5 minutes ago. Dkt. #9, p.281.  She only goes shopping with her mom and relies upon her mother to help her manage her money. Dkt. #9, pp.277-278.

On February 22, 2017, plaintiff presented to Easter Seals for counseling with Isaac Jacobs, LMSW. Dkt. #9, p.589. On March 1, 2017, plaintiff reported that she often felt depressed and struggles with motivation and organization. Dkt. #9, p.591. She recognized that support from a social worker had contributed to increasing stability. Dkt. #9, p.591. Although she reported a prior diagnosis of major depressive disorder and bipolar disorder, LMSW Jacobs determined that she did not meet the criteria for either diagnosis currently. Dkt.#9, p.591. LMSW Jacobs assessed plaintiff with depressive disorder and recommended a psychiatric diagnostic evaluation. Dkt. #9, p.591.

On March 8, 2017, plaintiff underwent a psychiatric evaluation with consultative examiner Adam Brownfield, Ph.D. Dkt. #9, p.693. Dr. Brownfield noted that plaintiff lived with her mother and four children, ages 18, 6, 4 and 9 months. Dkt. #9, p.693. Plaintiff reported sad moods, short-term memory deficits, concentration difficulty,

word finding issues and difficulty learning new material. Dkt. #9, p.693. She reported

that she was able to dress, bathe and groom herself, cook and prepare food, clean, do

laundry, shop, manage money and take public transportation. Dkt. #9, p.695. Upon

examination, she was observed to be well groomed, with appropriate eye contact,

adequate expressive and receptive language, and coherent and goal directed thought

processes, with a full range and appropriate affect. Dkt. #9, p.694. She was able to

count and do simple calculations and serial 3s correctly. Dkt. #9, p.694. She was able

to recall 3 out of 3 objects immediately and 2 out of 3 objects after a delay. Dkt. #9,

p.694. She recalled 5 digits forward and 3 digits backwards. Dkt. #9, p.694. Her

intellectual functioning was estimated to be in the low average range. Dkt. #9, p.694.

Dr. Brownfield opined that plaintiff demonstrated

> No evidence of limitation in understanding, remembering and applying simple directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior and maintaining well being, maintaining personal hygiene and appropriate attire, and being aware of normal hazards and taking appropriate precautions. She is moderately limited in sustaining concentration and performing a task at a consistent pace and applying complex directions and instructions.
>
> The results of the present evaluation appear to be consistent with cognitive problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Dkt. #9, p.695. Dr. Brownfield's diagnosis was "Rule out specific learning disorder" and

"Rule out mild neurocognitive disorder." Dkt. #9, p.695.

On March 21, 2017, LMSW Isaac Jacobs noted that plaintiff was experiencing increased stability but reported struggling with motivation and organization despite support through a preventive worker. Dkt. #9, p.591. He recommended a psychiatric diagnostic evaluation. Dkt. #9, p.591.

On April 4, 2017, state agency reviewer M. Momot-Baker determined that plaintiff had understanding and memory limitations that would cause moderate functional limitations, but that plaintiff was able to understand and remember simple and some more detailed instructions and work procedures and was able to relate and respond to others in an appropriate manner. Dkt. #9, pp.109 & 111. Although she may have lapses in focus, motivation and reliability, the frequency, intensity and duration of those occurrences would not be expected to substantially detract from plaintiff's ability to complete routine tasks at a reasonable pace. Dkt. #9, p.111. Despite some difficulty with adaptation, the state agency reviewer opined that plaintiff was able to cope with basic changes and make routine decisions. Dkt. #9, p.111.

On October 5, 2017, Nurse Practitioner Kim Page completed a DHS Employability Assessment and opined that plaintiff was permanently disabled due to her history of aneurysms and an aneurysm requiring treatment. Dkt. #9, pp.688-689. She indicated that plaintiff's memory was somewhat impaired and estimated that plaintiff was capable of standing, walking, sitting, pushing, pulling, bending, lifting and carrying more than four hours in an eight-hour work day. Dkt. #9, p.690.

On May 20, 2019, Harbinder Toor, M.D. conducted an internal medicine examination of plaintiff. Dkt. #9, p.731. Plaintiff reported that she was living with her boyfriend and engaged in the following activities of daily living: cooking, cleaning, laundry, shopping and child care. Dkt. #9, p.731. Dr. Toor observed a normal gait, ability to walk on heels and toes without difficulty, full squat, normal stance and no difficulty rising from a chair or getting on or off the examination table. Dkt. #9, p.732. She had full flexion, extension, lateral flexion and rotary movement bilaterally in the cervical and lumbar spine and full range of motion of all extremities. Dkt. #9, p.732. Dr. Toor determined that there were no limitations for any gross or fine motor activity or any other medical limitations for plaintiff. Dkt. #9, pp.731-740.

On September 9, 2019, plaintiff appeared without counsel and testified, along with an impartial vocational expert ("VE"), Sakinah Malik, at an administrative hearing before Administrative Law Judge ("ALJ"), John Costello. Dkt. #9, pp.45-66. The ALJ noted on the record that he had adjourned plaintiff's hearing on July 8, 2019[1] so that she could find new legal representation following the withdrawal of her prior counsel (Dkt. #9, pp.70-76).[2] Dkt. #9, p.47. The ALJ then inquired of plaintiff whether it was okay with her to go ahead with the hearing without a lawyer. Dkt. #9, p.47. Plaintiff

---

[1] Plaintiff signed an Acknowledgment Of Postponement In Order to Obtain Representation indicating that she had been advised both orally and in writing that she was entitled to a postponement of her hearing to obtain an attorney or other qualified representative to assist her but would be required to proceed with the hearing at the next scheduled hearing date. Dkt. #9, p.202.

[2] The ALJ had previously adjourned plaintiff's hearing on March 26, 2019 because the Monroe County SSI Advocacy Office withdrew from representation of plaintiff on November 8,, 2018. Dkt. #9, pp.96 & 147.

responded affirmatively, adding, "That's fine." Dkt. #9, p.47. The ALJ informed plaitniff

that he would ask her some questions and giver her a chance to explain how her health

problems affected her and affected her ability to work. Dkt. #9, p.47. The ALJ also

informed plaintiff that the VE would also "testify about the work issues involved in the

case." Dkt. #9, p.9.


Plaintiff testified that she attended special education classes through the

eleventh grade and has not obtained a General Educational Diploma ("GED"). Dkt. #9,

p.50. Since her aneurysms, plaintiff testified that she has difficulties with her short term

memory and balance. Dkt. #9, pp.51-52. Her speech is slurred and she has to

concentrate on her speech. Dkt. #9, p.58. She has to share custody of her four children

with her mother. Dkt. #9, p.51. She rode her bicycle approximately 15-20 minutes to get

to the hearing. Dkt. #9, p.53. She is capable of taking the bus. Dkt. #9, p.61. She does

not have a driver's license. Dkt. #9, p.60. She volunteers in the cafeteria of her son's

school. Dkt. #9, p.55. She has difficulty staying on task and has to think about the

words she speaks. Dkt. #9, pp.55-56. She needed a third surgery to resolve another

aneurysm, but had not been able to schedule it. Dkt. #9, p.57. The ALJ asked plaintiff if

there was anything else she wanted to tell him that he had not asked her. Dkt. #9, p.62.

Plaintiff responded negatively. Dkt. #9, p.62. The ALJ then advised plaintiff that he was

going to take some testimony from the VE to complete the hearing. Dkt. #9, p.62.


When asked to assume an individual with plaintiff's age, education and

past work experience who could perform the full range of light work, except that she

could not balance on uneven surfaces, climb ladders or work around hazards or at

heights and would be limited to simple, routine tasks, the VE testified that plaintiff could

work as an usher or counter clerk, each of which were unskilled, light exertion positions.

Dkt. #9, p.64. When asked to assume that such an individual needed to be reminded of

work tasks every half hour by a supervisor, the VE testified that plaintiff would be

unable to sustain employment. Dkt. #9, p.65.

The ALJ rendered a decision that plaintiff was not disabled on September

17, 2019. Dkt. #9, pp.27-39.

Plaintiff submitted additional evidence to the Appeals Council, which

denied review on October 1, 2020. Dkt. #9, p.5. More specifically, the Appeals Council

determined that 16 pages of records from the Monroe County Department of Social

Services dated March 6, 2019[3] through July 22, 2019[4] did not show a reasonable

probability of changing the outcome of the decision and that the 8 pages of medical

---

[3] On March 6, 2019, Raquel Benchoam-Ravid, M.D. completed a DHS Employability
Assessment following an independent examination of plaintiff during which she observed
abnormal heel & toe walking indicative of a balance problem. Dkt. #9, p.84. Dr. Benchoam-
Ravid opined that plaintiff had no evidence of functional limitation for walking, climbing stairs,
sitting, carrying ten pounds frequently or twenty pounds occasionally, seeing, hearing, speaking
and using public transportation, but was limited to between one and two hours of standing and
between two and four hours of pushing, pulling or bending. Dkt. #9, p.85. Dr. Benchoam-Ravid
opined that plaintiff was capable of working up to 40 hours but could not stand without moving
for more than ten minutes at a time due to lack of balance or work in an environment with
unprotected heights. Dkt. #9, p.86.

[4]
 On July 22, 2019, P.A.-C Cynthia A. Zink, indicated that she was unable to complete the DHS
Employability Assessment form because plaintiff had canceled or failed to keep her
appointments over the past year despite evidence of a large left intercranial aneurysm. Dkt. #9,
p.90.

records from the University of Rochester dated October 16, 2019[5] was subsequent to

disability period. Dkt. #9, p.6.

Plaintiff commenced this action seeking review of the Commissioner's final

decision on October 27, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*,

569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on

adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145

F.3d 106, 111 (2d Cir. 1998).

---

[5] On October 16, 2019, P.A.-C Zink noted that plaintiff does not have physical functional disability but relates cognitive issues. Dkt. #9, p.23. Neurological examination revealed normal speech/memory/fund of knowledge and normal gait. Dkt. #9, p.22.  PA-C Zink referred plaintiff to the Integrative Cognitive Rehabilitation Program for evaluation. Dkt. #9, p.23. Plaintiff was encouraged to keep her appointment with the neurosurgeon to address her aneurysm and to talk to her primary care physician about her elevated blood pressure. Dkt. #9, p.25.

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of November 29, 2016; (2) plaintiff's status post

subarachnoid hemorrhage, cerebral aneurysm repair and obesity constitute severe

impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4)

plaintiff retained the RFC to perform light work with the following limitations: no

balancing on uneven surfaces, climbing of ladders, work around hazards or at heights

and simple, routine tasks; and (5) plaintiff had no past work, but was capable of working

as an usher and counter clerk, each of which were unskilled, light exertion positions,

and was not, therefore, disabled within the meaning of the SSA. Dkt. #9, pp.32-39.

Plaintiff argues that the ALJ failed to evaluate the effect of all her

diagnoses or consider how such diagnoses impacted plaintiff's verbal reasoning and

short-term recall, written language, need for supervision, dependence upon others, off-

task time, ability to communicate, ability to adapt, motivation, comprehension,

emotional regulation and ability to stand or sit for extended periods of time. Dkt. #10-1,

pp.13-18. Plaintiff argues that the ALJ should have developed the record by ordering

cognitive testing. Dkt. #10-1, p.20. Plaintiff also challenges that ALJ's failure to advise

her of her right to cross-examine witnesses at her hearing, arguing that she was

prejudiced by this failure because the ALJ failed to pose hypothetical questions to the

VE which encompassed all of her limitations. Dkt. #10-1, pp.21-24. Plaintiff argues that

the Commissioner should have considered new and material evidence referring plaintiff

for integrative cognitive rehabilitation to evaluate her thinking. Dkt. #10-1, p.26.

The Commissioner responds that the ALJ relied upon the consultative

psychiatric examination to assess plaintiff's emotional and intellectual capacity and

properly restricted plaintiff to unskilled work. Dkt. #11-1, pp.5-10. The Commissioner

notes that a medical expert for the SSA properly determined that the medical evidence

did not support consideration of any mental disorder other than neurocognitive

disorders and that the ALJ properly relied upon the opinions of the consultative

examination and state agency reviewer, as well as the absence of treatment for other

mental disorders, to determine that plaintiff was capable of performing unskilled work.

Dkt. #11-1, pp.11-14. The Commissioner argues that the ALJ's failure to advise the

plaintiff that she could question the VE was harmless error because the ALJ

incorporated the physical and mental functional limitations supported by the medical

evidence into his questions to the VE. Dkt. #11-1, pp.15-20. The Commissioner notes

that plaintiff does not identify any gaps in the record that would require further inquiry.

Dkt. #11-1, pp.21-22. Finally, the Commissioner responds that the evidence submitted

to the Appeals Council does not alter the ALJ's analysis of plaintiff's RFC for the

relevant time period. Dkt. #11-1, pp.22-23.


   The Appeals Council is required to consider evidence submitted after the

ALJ's hearing decision if the plaintiff demonstrates good cause for failing to submit the

evidence to the ALJ and that the additional evidence is new and material. *Tricarico v.*

*Colvin*, 681 Fed. App'x 98, 102 (2d Cir. 2017).  Evidence is material if it is relevant to

the plaintiff's condition during the time period for which benefits were denied and there

is a reasonable possibility that the new evidence would have altered the ALJ's decision.

*Suttles v. Colvin*, 654 Fed. App'x 44, 47 (2d Cir. 2016). If the Appeals Council fails to

consider new and material evidence, the proper course is to remand the case for further

consideration. *Stratton v. Colvin*, 51 F. Supp.3d 212, 218 (N.D.N.Y. 2014). However,

remand is only appropriate where there is a reasonable possibility that the new and

material evidence would have influenced the ALJ to render a different determination as

to disability. *Tricarico*, 681 Fed. App'x at 102. In the instant case, the Court agrees that

the March 16, 2019 and July 22, 2019 Assessments do not suggest any basis to alter

the ALJ's analysis given that they are not inconsistent with other evidence in the record.

Furthermore, the Court does not believe that the referral of plaintiff to the Integrative

Cognitive Rehabilitation Program for evaluation is sufficient to suggest the possibility of

a different outcome given the development of the record regarding plaintiff's cognitive

difficulties.

        In light of the essentially non-adversarial nature of a social security

proceeding, it is well established that an ALJ has an affirmative obligation to develop

the administrative record. *See, e.g., Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

This duty is heightened where, as here, a plaintiff properly waives her right to counsel

and proceeds *pro se. Id.* at 113. More specifically, an ALJ has a duty to adequately

protect a *pro se* plaintiff's rights by ensuring that all of the relevant facts are sufficiently

developed and considered. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). However,

the ALJ is required to seek out additional evidence only where there are obvious gaps

in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014). The ALJ is not

obligated to seek additional medical records where the record evidence is sufficient for

the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec'y,* 16-CV-

831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

Contrary to plaintiff's argument, the record was sufficient for the ALJ to assess plaintiff's mental capacity for employment. While recommendations from plaintiff's providers that she undergo further evaluation of her cognitive issues were not completed, the ALJ developed the record regarding such symptoms by obtaining a consultative psychological evaluation, which provided substantial evidence for his conclusion that plaintiff was capable of performing simple, routine tasks. *See David F. v. Comm'r of Soc. Sec'y*, 6:20-CV-6770. 2022 WL 205698, at *4 (W.D.N.Y. Jan. 24, 2022) (further intelligence testing was not required where consultative psychological examiner's report provided substantial evidence to support ALJ's findings regarding plaintiff's cognitive functioning). The ALJ was also permitted to rely upon plaintiff's reports of significant activities of daily living as evidence of her capacity to perform simple, routine tasks. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013). Because the ultimate issue of disability is reserved for the Commissioner, opinions by plaintiff's medical providers to the effect that plaintiff was permanently disabled due to cognitive deficits were not entitled to any weight. 20 C.F.R. § 404.1527(e)(1).

Having determined that the ALJ satisfied his obligation to develop the record by obtaining a psychological evaluation of plaintiff's mental capacity, the Court turns to whether his failure to advise plaintiff that she could question the VE at the administrative hearing requires remand. The failure to inform a plaintiff appearing pro se of her right to cross-examine a VE is legal error. *Alvarez v. Bowen*, 704 F. Supp.49, 53 (S.D.N.Y. 1989). However, remand for lack of representation is proper only if the lack of counsel resulted in prejudice to the plaintiff or unfairness in the proceeding.

*Sheerinzada v. Colvin*, 4 F. Supp.3d 481, 497 (E.D.N.Y. 2014). Determining whether a plaintiff was prejudiced is bound up in the inquiry of whether the ALJ conducted the hearing properly and adequately developed the record in the manner required in pro se cases. *Id.* If, however, the ALJ properly questions the VE with hypothetical questions incorporating the plaintiff's particular physical and mental impairments, such prejudice is harmless. *Alvarez,* 704 F. Supp at 54; *See Martino ex rel. C.P. v. Astrue*, 09 Civ. 6479, 2012 WL 1506058, at *11 (S.D.N.Y. April 27, 2012) (collecting cases holding that remand is unnecessary where the ALJ adequately developed the record and based his findings on substantial evidence). In as much as the ALJ incorporated the mental and physical limitations supported by the medical evidence and plaintiff's activities of daily living into his hypothetical to the VE and his RFC, the Court finds no basis for remand.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. 10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**March    , 2022**

                                          **s/ H. Kenneth Schroeder, Jr.**
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**